Of Counsel:
CRONIN, FRIED, SEKIYA,
  KEKINA & FAIRBANKS

L. RICHARD FRIED, JR.        0764-0
JOHN D. THOMAS, JR.          1415-0
GEOFFREY K. S. KOMEYA        6056-0
600 Davies Pacific Center
841 Bishop Street
Honolulu, Hawaii  96813
Telephone:  (808) 524-1433
Facsimile:  (808) 536-2073
E-mail:      rfried@croninfried.com
             jthomas@croninfried.com
             gkomeya@croninfried.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JoANNA L. McFALL, Individually and as the Personal Representative of the Estate of JOHN E. McFALL, Deceased; JACK P. McFALL and JARRAN E. McFALL,<br><br>       Plaintiffs,<br><br>   vs.<br><br>UNITED STATES OF AMERICA,<br><br>       Defendant. | CIVIL NO. _____<br>(FTCA - Medical Malpractice)<br><br>COMPLAINT |

## COMPLAINT

Plaintiffs above named, by and through their attorneys, Cronin, Fried, Sekiya, Kekina & Fairbanks, for claims for relief against Defendant above named, allege and aver as follows:

## COUNT I

1.      At all times relevant herein, plaintiff JoAnna L. McFall (hereinafter "Mrs. McFall"), Individually and as Personal Representative of the Estate of John E. McFall, deceased, was domiciled in and a citizen of the City and County of Honolulu, State of Hawaii.

2.      Mrs. McFall is the surviving wife of John E. McFall, deceased, and is the duly appointed Personal Representative of the Estate of John E. McFall (hereinafter the "Estate").

3.      At all times relevant herein, plaintiffs Jack P. McFall and Jarran E. McFall were domiciled in and citizens of the City and County of Honolulu, State of Hawaii.

4.      John E. McFall was the natural and legal father of Jack P. McFall and Jarran E. McFall.

5.      Plaintiffs Jack P. McFall and Jarran E. McFall are the natural and legal son and daughter, respectively, of John E. McFall and JoAnna L. McFall.

6.     Mrs. McFall brings this action individually and as the duly appointed Personal Representative of the Estate.

7.     This is a medical malpractice and personal injury action to recover damages which arise from negligent acts and/or omissions of employees of the Government of the United States of America, while acting within the scope of their office and/or employment, under circumstances where the Government of the United States of America, if a private party, would be liable to plaintiffs.

8.     Jurisdiction is conferred on this Court by Title 28, United States Code § 1346.

9.     Pursuant to Title 28, United States Code, §§ 2671, et seq., administrative claims on behalf of plaintiffs were filed on or about October 27, 2016 with the Department of the Army through the Center Judge Advocate, Tripler Army Medical Center.

10.    The administrative claims were received by the Department of the Army on or about October 28, 2017.

11.    More than six months have elapsed without final disposition of the administrative claims.

12.    At all times relevant herein, Defendant United States of America (hereinafter "Defendant") operated a medical care facility in the

City and County of Honolulu, State of Hawaii, known as Tripler Army

Medical Center (hereinafter "TAMC"), through the Department of the Army.

13.     On February 11, 2013 John E. McFall presented to the TAMC

Emergency Department.  Mr. McFall reported that while driving to work he

experienced new onset left arm, neck and jaw numbness and a shaking

chill type of sensation.  He also experienced sweating episodes while

driving.

14.     Mr. McFall was concerned by these symptoms; he stopped at a

drugstore, bought aspirin 325 mg and took it on the way to the emergency

department.

15.     After evaluation and testing the TAMC providers determined a

clinical impression of left face and arm numbness of uncertain etiology.

16.     Mr. McFall was directed to follow up by keeping a previously

scheduled appointment with his primary care physician and take one 325

mg aspirin daily.

17.     Mr. McFall saw his internist, Dr. Dennis W. Ehrlich at TAMC on

February 14, 2013 as scheduled.

18.     Dr. Ehrlich's assessment was an atypical migraine headache.

He prescribed aspirin 325 mg daily.

- 5 -

19.    TAMC providers evaluated Mr. McFall again on March 23, 2013 in the emergency department.  Mr. McFall suffered heart palpitations and a fast heart rate.

20.    These symptoms started abruptly the night before at rest and had constantly continued.

21.    Mr. McFall initially experienced dizziness and sweating.

22.    He also had difficulty breathing and shortness of breath on exertion.

23.    Mr. McFall reported that he had previously experienced similar symptoms many times previously.  He reported that he had palpitations on a daily basis usually lasting 30 seconds to five minutes.

24.    Mr. McFall had an elevated heart rate.

25.    Mr. McFall's heart had an abnormal rhythm, described as "irregularly irregular."

26.    An EKG identified atrial fibrillation with rapid ventricular response (RVR) and some flutter waves.

27.    Mr. McFall reported a family history of heart disease in a grandparent and a paternal uncle who died of a heart attack at age 36.

28.    The TAMC providers gave Mr. McFall diltiazem, a calcium channel blocker, via IV push, to restore his normal heart rhythm and rate.

29.    The TAMC medical officer of the day (MOD) "spoke with cardiology" who recommended that aspirin 325 mg daily be continued, that Mr. McFall be prescribed metoprolol XR (a beta blocker) 25 mg daily, that he follow-up with internist Dr. Ehrlich on March 26, 2013, that he undergo an echocardiogram and receive a cardiology consult after the echocardiogram.

30.    The TAMC providers' clinical impression for Mr. McFall upon his discharge from the emergency department was atrial fibrillation (paroxysmal).

31.    Dr. Ehrlich evaluated Mr. McFall on March 26, 2013.

32.    Mr. McFall reported that he had shortness of breath during his episode of atrial fibrillation.

33.    Mr. McFall reported that he had slight shortness of breath with activities, not enough to worry him.  The shortness of breath resolved with his heart rate decreasing.

34.    Dr. Ehrlich noted that Mr. McFall had paroxysmal atrial fibrillation.  Dr. Ehrlich noted it was of concern that Mr. McFall had had two episodes of facial and body weakness lasting for several hours.

35.    Dr. Ehrlich stated that these episodes were assumed to be atypical migraine headaches in the past but "now I would feel that they were small TIAs [transient ischemic attacks] from his atrial fibrillation."

36.    Dr. Ehrlich concluded that Mr. McFall should be seen by cardiology, in particular an electrophysiologist, and be screened as a candidate for therapy.

37.    The TAMC providers performed an echocardiogram on Mr. McFall on March 26, 2013.  The echocardiogram was interpreted as normal except for an echodensity in the left atrium likely representing a cor triatriatum which did not appear to be causing obstruction or compromising hemodynamic flow.

38.    Cardiologist Dr. Jamalah Munir evaluated Mr. McFall on April 1, 2013.

39.    Dr. Munir's assessment was paroxysmal atrial fibrillation.  Dr. Munir requested a cardiac MRI to further characterize the density noted in the echocardiogram.  He continued Mr. McFall's prescription for Toprol XL and aspirin 325 mg daily.

40.    Dr. Munir recorded that electrophysiology testing was not indicated at this time, unless conservative management failed.

41.    The TAMC providers performed a cardiac MRI on Mr. McFall on April 4, 2013.  The MRI was interpreted as normal except for a thin septum dividing the left atrium, consistent with cor triatriatum.

42.    Dr. Munir evaluated Mr. McFall on April 20, 2013.  Mr. McFall reported his daily tachypalpitations had improved on the Toprol XL medication.

43.    Dr. Munir noted that the finding of cor triatriatum was of unclear significance.

44.    Dr. Munir directed Mr. McFall to continue Toprol XL medication and daily aspirin.

45.    On June 24, 2013 Mr. McFall presented to the TAMC emergency department with a chief complaint of chest pain of three days duration.

46.    Mr. McFall described atrial fibrillation symptoms that had lasted for three days.  He reported slight chest pain, described as 2/10.

47.    Mr. McFall reported a fast and pounding heart beat, an irregular heart beat and missing beats.  He felt like he might pass out.

48.    Mr. McFall stated he had had chest discomfort and mild difficulty breathing.

49.   Mr. McFall was noted to have an elevated heart rate and abnormal heart rhythm.

50.   An EKG was abnormal, demonstrating atrial fibrillation, atrial flutter, and abnormal heart rhythm.

51.   The TAMC providers treated Mr. McFall with diltiazem to restore his normal heart rhythm and rate.

52.   Dr. David Heaton, the emergency department physician, discussed Mr. McFall's case by telephone with cardiologist Dr. Munir.

53.   Dr. Munir advised Dr. Heaton to increase Mr. McFall's Toprol XR medication to 100 mg, continue daily aspirin and have Mr. McFall see Dr. Munir in two days to consider further anticoagulation and cardioversion strategies.

54.   Mr. McFall was discharged from the emergency department with a chest pain level of 1/10.

55.   His heart rhythm was unchanged.

56.   Dr. Heaton's clinical impression was chronic atrial fibrillation with controlled rate and atrial flutter with uncontrolled rate.

57.   Dr. Munir evaluated Mr. McFall on June 26, 2013.

58.   Mr. McFall's heart rhythm had converted out the previous evening and he was in sinus rhythm.

59. Dr. Munir discussed treatment options with Mr. McFall.

60. Dr. Munir prescribed a "pill in pocket" strategy in which Mr. McFall would take a 100 mg flecainide tablet after taking an additional Toprol XR pill to treat recurrent atrial fibrillation episodes.

61. Dr. Munir prescribed flecainide 100 mg tablets to be taken as needed for atrial fibrillation.

62. Mr. McFall had multiple risk factors for coronary artery disease, including obesity with a BMI (body mass index) of 30.41, significant hyperlipidemia (HDL 34, Triglycerides 190) and family history of paternal grandparents with history of myocardial infarction.

63. Mr. McFall's symptoms of chest pain, chest discomfort and difficulty breathing are symptoms known to be associated with coronary artery disease.

64. Based upon Mr. McFall's presenting symptoms and risk factors for coronary artery disease, it was essential that a comprehensive cardiac evaluation be performed to rule out coronary artery disease.

65. Flecainide is a medication known to cause myocardial infarctions in patients with coronary artery disease.

66. The standard of care requires that patients be assessed for coronary artery disease before being described flecainide.

67.   The standard of care requires that cardiac stress testing be performed on patients with risk factors for coronary artery disease undergoing an assessment for coronary artery disease before being prescribed flecainide.

68.   Dr. Munir violated the standard of care by failing to have cardiac stress testing performed in response to Mr. McFall's clinical presentation on June 24, 2013.

69.   Dr. Munir violated the standard of care by failing to have cardiac stress testing performed to assess coronary artery disease before prescribing flecainide on June 26, 2013.

70.   Had appropriate evaluation for coronary artery disease been initiated up to the time of Mr. McFall's death on November 1, 2014, his multivessel coronary artery disease would have been identified and successfully reperfused by angioplasty, stenting or coronary artery bypass.

71.   Had Mr. McFall's coronary artery disease been diagnosed and treated in accordance with the standard of care, Mr. McFall would have lived a normal life expectancy.

72.   On November 1, 2014, John E. McFall suffered a fatal cardiac event.

73.   Autopsy identified severe coronary artery disease with 90% stenosis of the left circumflex artery, 90% stenosis of the right coronary artery, and 50% stenosis of the left anterior descending artery.

74.   Cause of death was listed as coronary artery disease with thrombosis.

75.   Defendant negligently examined, evaluated, tested, diagnosed, cared for, and/or treated John E. McFall.

76.   As a direct and legal and/or proximate result of the carelessness, negligence, actions and omissions of Defendant as aforesaid, John E. McFall died.

77.   As a further direct and legal and/or proximate result of the carelessness, negligence, actions and omissions of Defendant as aforesaid, John E. McFall suffered great physical pain, suffering, discomfort, emotional injuries and distress and mental anguish and the Estate is entitled to recover damages therefor as provided in Hawaii Revised Statutes (hereinafter "H.R.S.") § 663-7.

78.   As a further direct and legal and/or proximate result of the carelessness, negligence, actions and omissions of Defendant as aforesaid, John E. McFall suffered permanent loss of enjoyment of life and

the inability to pursue normal activities of life; and the Estate is entitled to recover damages therefor as provided in H.R.S. § 663-7.

79. As a further direct and legal and/or proximate result of the carelessness, negligence, actions and omissions of Defendant as aforesaid, Plaintiffs have incurred medical, funeral and burial, and various other expenses in amounts not presently ascertainable that shall be shown at the time of trial; and Plaintiffs are thereby entitled to recover damages as provided in H.R.S. § 663-3.

80. As a further direct and legal and/or proximate result of the carelessness, negligence, actions and omissions of Defendant as aforesaid, the Estate has incurred loss of future excess earnings; and the Estate is thereby entitled to recover damages as provided in H.R.S. § 663-8.

81. As a further direct and legal and/or proximate result of the carelessness, negligence, actions and omissions of Defendant as aforesaid, Plaintiffs have suffered, and will continue to suffer in the future, pecuniary injury, loss of financial support, loss of love and affection, society, companionship, comfort, consortium, protection, spousal and parental care and attention, advice, counsel, loss of spousal and parental care, training, guidance and education, and other benefits of their husband

and father, respectively, for which said Plaintiffs are entitled to recover damages as provided in H.R.S. § 663-3; and in addition, have suffered and continue to suffer serious mental anguish and emotional distress and have been permanently injured, and said Plaintiffs are also entitled to recover damages therefor.

## COUNT II

82.    The allegations contained in paragraphs 1 through 81 are realleged and incorporated herein by reference.

83.    At all times relevant herein, the employees, agents, servants and representatives of TAMC who examined, diagnosed, cared for and treated John E. McFall were acting within the course and scope of their employment, agency and service with TAMC and therefore with Defendant.

84.    Defendant is liable to Plaintiffs for the tortious conduct of the above-mentioned employees, agents, servants and representatives as set forth in this Complaint under the doctrine of respondeat superior and/or agency principles.

## COUNT III

85.    The allegations contained in paragraphs 1 through 84 are realleged and incorporated herein by reference.

86.     Defendant and their employees, agents, servants and

representatives failed to inform John E. McFall and/or Plaintiffs of the

information a reasonable patient needs from health care providers to allow

the patient and/or the patient's guardian or legal surrogate to make an

informed decision regarding proposed treatment.

87.     As a direct, legal and/or proximate result of Defendant's failure

to provide Plaintiffs said information, Plaintiffs have suffered, and will

continue to suffer, the injuries and damages as set forth herein.

WHEREFORE, Plaintiffs demand judgment against Defendant as

follows:

a.      For general and special damages in amounts that will be

        proven at trial; and Plaintiffs further state that the amount of

        their damages as asserted herein falls within the jurisdictional

        requirements of this Court;

b.      Interest as allowed by law;

c.      Plaintiffs' costs of suit and attorneys' fees; and

d.      Such other and further relief as this Court deems just and

        proper.

DATED:  Honolulu, Hawaii, August 17, 2017.


       /s/ John D. Thomas, Jr.

L. RICHARD FRIED, JR.
JOHN D. THOMAS, JR.
GEOFFREY K. S. KOMEYA
Attorneys for Plaintiffs